IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-40078-01-JAR |
| | ) | |
| VIROK D. WEBB, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Defendant Virok Webb filed a Motion to Withdraw Plea of Guilty (Doc. 684), after he

entered a plea of guilty, but before sentencing.   For the reasons set forth in detail below, the

Court denies the motion.

**I.      Background**

Webb was charged in a First Superseding Indictment, with conspiracy to distribute crack

cocaine (Count 1), conspiracy to distribute powder cocaine (Count 2), and committing or aiding

and abetting the commission of the murder of Crystal Fisher to prevent her from communicating

to a law enforcement officer of the United States about the commission of those drug crimes

(Count 3).[1]  Webb entered into a binding plea agreement with the government, pursuant to Fed.

R. Crim. P. 11(c)(1)(C), on March 7, 2014, pleading guilty to Count 1, the crack cocaine

conspiracy.[2]  This Court accepted the plea agreement and thus agreed to be bound by its terms.

Sentencing was continued because on April 11, 2014, the Court granted Webb's motion to

withdraw his counsel, Jacquelyn Rokusek, and on April 21, 2014, appointed new counsel, Lance

_____

[1]Doc. 50.

[2]Plea Agreement, Doc. 512.

Sandage.  On February 23, 2015, Webb filed the instant motion to withdraw his guilty plea, claiming that in late 2014, his defense counsel learned from defense counsel for codefendant Marcus Roberson, that the government had failed to disclose exculpatory evidence.  Though Webb's plea agreement included waivers of his right to withdraw the plea, and waivers of most of his appellate rights, Webb maintains that he may properly withdraw his plea under the circumstances he alleges, the government's failure to disclose exculpatory evidence before he entered his plea of guilty.

Rule 11(d)(2)(B) allows a defendant to withdraw a plea of guilty after the court accepts the plea but before it imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal."[3]  Motions to withdraw guilty pleas before sentencing are to be freely allowed, viewed with favor, treated with liberality, and given a great deal of latitude.[4]  But the burden is on the defendant to show a fair and just reason for withdrawal.[5]  Webb offers this reason—that the government failed to disclose exculpatory evidence, in violation of  *Brady v. Maryland*,[6] and *Giglio v. United States*,[7] and that he would not have pled guilty had they disclosed this evidence to him.

---

[3]Fed. R. Crim. P. 11(d)(2)(B).

[4]*United States v. Carr*, 80 F.3d 413, 419–420 (10th Cir. 1996)(citations omitted).

[5]*Id.*

[6]373 U.S. 83 (1963).

[7]405 U.S. 150 (1972).

II.     **Discussion**

    A.     **No *Brady/Giglio* violation and thus no fair and just reason for withdrawal of guilty plea**

The Court begins with the question of whether the government committed a *Brady/Giglio* violation. Webb offers that through codefendant Roberson's counsel, he discovered evidence that government witness Antonio Cooper was involved in a homicide investigation in Manhattan, Kansas in 2001. Highly summarized, Anthony Mitchell and Jeremy Ware traveled to Manhattan to conduct a drug deal with Wesley Alexander, which soon went awry. An altercation ensued with Alexander's friends, and after someone struck Mitchell in the back with a board, Mitchell began firing a gun indiscriminately. In this manner, Mitchell shot and killed Shaun Leach, an unfortunate passenger in a nearby vehicle whose occupants were involved in the altercation. During the homicide investigation, police interviewed Antonio Cooper, who admittedly was present and an eyewitness to the shooting. Several other witnesses told police that Cooper supplied the gun to Mitchell during the altercation. But Mitchell identified Jeremy Ware as the person who supplied him with the gun, during the altercation.[8] Mitchell was prosecuted by the State of Kansas, and pled no contest to second degree murder.

Jeremy Ware and the victim, Shaun Leach, were both servicemen stationed at Fort Riley, Kansas. Ware was court martialed for his part in Leach's homicide. The court's findings in the Ware court-martial proceeding are not materially inconsistent with Mitchell's statement that Ware had supplied him with the gun. The courts martial judge found that

    During the early morning hours of 21 January 2001, in the parking

---

[8]These facts are laid out in greater detail in the Kansas Court of Appeals decision on Mitchell's habeas petition, *Mitchell v. State*, 111 P.3d 198 (unpublished table decision), 2005 WL 1136872, at *1 (Kan. Ct. App. May 13, 2005).

lot of a bar in Manhattan, Kansas, appellant witnessed an altercation between a civilian, Anthony Mitchell, and a soldier, Private (PVT) Craig Newsome, and a group of PVT Newsome's friends. An acquaintance of appellant's, Antonio Cooper, was also in the parking lot observing the fight. Appellant looked on as PVT Newsome and his group of friends became aggressive and hostile and formed a "U-shape" around Mr. Mitchell. The tension of the situation increased when PVT Newsome hit Mr. Mitchell in the back with a board. Angered by the attack on Mr. Mitchell, appellant went to the trunk of his car and retrieved a loaded handgun. He tucked the gun inside his pants, pulled his shirt over it, and "walked over to where Antonio Cooper was standing." At this point, the fight started to break up and PVT Newsome's group had left the scene and were walking to their vehicles. But appellant was still angry so he removed his gun and handed it to Mr. Cooper "intending that [Cooper], himself, would resolve the situation by retaliating against the group because of their actions," or that Mr. Cooper would pass the weapon to Mr. Mitchell who could get even with PVT Newsome. When Mr. Cooper received the gun, he handed it to Mr. Mitchell who went after PVT Newsome's group as they tried to drive out of the parking lot. Mr. Mitchell then "fired off shots in retaliation for them attacking him."[9]

Ware was charged and pled guilty under the military code of justice, to attempted unpremeditated murder, violation of a lawful general regulation carrying a concealed weapon and wrongful acquisition of a firearm.  Police did not file charges against Antonio Cooper.

Nonetheless, Webb argues that this information about Cooper was exculpatory, or impeachment evidence that the government should have disclosed, so the Webb could have investigated further.  Webb also states, inexplicably, that had he known this information about Cooper, he would not have entered into the plea agreement and pled guilty to Count 1 of the First Superseding Indictment.

*Brady* and its progeny require the government to disclose both exculpatory evidence and

---

[9]*United States v. Ware*, No. Army 20010923, 2005 WL 6524258, at *1 (A. Ct. Crim. App. Mar. 10, 2005).

evidence that possibly could be used to impeach a government witness, whether or not requested

by the defendant.[10]  In order to establish a *Brady* violation, the defendant must demonstrate: (1)

the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the

evidence was material.[11]

As a threshold matter, Webb must demonstrate that the prosecution was actually in

possession of the favorable evidence, or that one of the prosecution's agents was in possession of

it.[12]  To be sure, Riley County law enforcement officials, who prosecuted Mitchell, and U.S.

Army law enforcement officials, who prosecuted Ware, possessed information about these cases.

But neither Riley County nor the U.S. Army were involved in the investigation and prosecution

of this case; the investigating agencies were the Junction City Police Department and the DEA,

and the prosecuting office was the United States Attorney's Office.  And as the Tenth Circuit

held in *United States v. Beers*,[13] there is no *Brady* violation when the federal prosecution was

unaware of impeachment evidence held by local and state police, because there was no evidence

of federal participation in that investigation.  Nor was there evidence in this case of federal

participation in the Riley County prosecution of Mitchell or the wholly separate institution of

military justice that rendered the courts-martial of Ware.

Moreover, the government states that it was unaware of the Mitchell or Ware homicide

---

[10]*United States v. Erickson*, 561 F.3d 1150, 1162 (10th Cir. 2009) (*citing Brady v. Maryland*, 373 U.S. at 87) (government is required to disclose evidence favorable to an accused where the evidence is material to either guilt or punishment); *United States v. Agurs*, 427 U.S. 97, 107 (1976)(disclosure is required even when the defendant has no requested the withheld material or has made only a general request); and *United States v. Bagley*, 473 U.S. 667, 676 (1985)(the disclosure obligation includes impeachment as well as exculpatory evidence)).

[11]*United States v. Diaz*, 679 F.3d 1183, 1192 (10th Cir. 2012).

[12]*Erickson*, 561 F.3d at 1163 (citing *United States v. Velarde,* 485 F.3d 553, 559 (10th Cir.2007)).

[13]189 F.3d 1297, 1304 (10th Cir. 1999).

cases until codefendant Roberson's defense counsel brought this information to the government's attention, and thus the government neither possessed, controlled nor was aware of the information about Cooper.  Indeed, the government offers that the investigating agencies in the present case, namely the Junction City Police Department and the DEA, both conducted criminal history checks on government witnesses, including Antonio Cooper, during the investigation. The criminal history check on Cooper did not include any material related to the 2001 homicide investigation.  Moreover, following codefendant Roberson's supplemental motion for new trial,[14] the government again ran a quality control check to insure that Cooper's criminal history contained no records related to the 2001 homicide; as with the first check, no record was found.  And, there is no indication in Webb's motion that either the prosecution or its agents were aware of the information, much less in possession of it.

To the extent Webb argues that the government should or could have learned of this information, this Court rejects that argument.  First, as the Tenth Circuit noted in *United States v. Hoyle*,[15] an argument that the government could or should have known about a witness's prior municipal court conviction, "highlights that this evidence was not in the 'possession or control of the government' as *Brady* requires, and the fact that there was no allegation that the "government kept itself intentionally ignorant" of the witness's prior conviction, shows that the prosecution did not suppress the evidence.[16]

Secondly, the information the government did not possess or have knowledge about was

---

[14]Doc. 675.

[15]751 F.3d 1167, 1171–72 (10th Cir. 2014)

[16]*Id.*

6

more tenuous than a prior municipal court conviction.  Antonio Cooper was an eyewitness to a

murder in 2001, never charged with any crime, and was merely mentioned in the two reported,

but unpublished decisions concerning the state court conviction of Anthony Mitchell and the

courts martial of Jeremy Ware for their participation in the murder.[17]  This Court declines to find

that the government has any duty to discover the mere mention of a witness's name in a decision

concerning the prosecution of someone for an unrelated homicide more than ten years before the

case at hand.  Webb fails to show the first prong of a *Brady* violation, that the prosecutor

suppressed the evidence.

Nor does Webb convincingly show that the evidence was favorable to him or material, as

*Brady* requires.  For under *Brady*, information is not material unless there is a reasonable

probability that the result of the proceeding would have been different, that is, a "likelihood of a

different result is great enough to undermine confidence in the outcome."[18]  Conversely, "[t]he

mere possibility that an item of undisclosed information might have helped the defense, or might

have affected the outcome of the trial, does not establish 'materiality' in the constitutional

sense."[19]

This Court finds implausible any argument that the information about Cooper was

exculpatory with respect Webb.  First, it is important to note that Webb pled guilty to Count 1,

the conspiracy to distribute crack cocaine.  Webb did not plead guilty to the murder charge in

---

[17]*See United States v. Ware*, No. Army 20010923, 2005 WL 6524258, at *1 (A. Ct. Crim. App. Mar. 10, 2005); *Mitchell v. State*, 111 P.3d 198 (unpublished table decision), 2005 WL 1136872, at *1 (Kan. Ct. App. May 13, 2005).

[18]*Smith v. Cain*, 132 S. Ct. 627, 630 (2012).

[19]*United States v. Agurs*, 427 U.S. 97, 109–110 (1976).

Count 3.  Codefendant Roberson, in his supplemental motion for new trial,[20] argued that the evidence about Cooper was exculpatory and consistent with his defense that Cooper shot Crystal Fisher, not Roberson.  But, as the Court details in its Memorandum Order and Opinion denying codefendant Roberson's motions for judgment and new trial,[21] this evidence about Cooper would likely have been inadmissible in any trial in this case.  First, given that Cooper was neither convicted of nor even charged for any role in the 2001 homicide, it is highly unlikely that this evidence would have been admissible under Fed. R. Evid. 404(b), as it would not be probative of intent, nor any of the other bases for admissibility of prior acts.  Nor would the evidence be admissible to prove bad character.  For Fed. R. Evid. 608 does not permit introduction of evidence regarding collateral matters solely for the purpose of impeaching the credibility of a witness, in that it prohibits proving by extrinsic evidence, a specific instance of the conduct of a witness.[22]

Secondly, even if this evidence was admissible, it is highly unlikely that it would have led to a different outcome in the trial.  Roberson's defense was that Cooper killed Fisher.  But the evidence was weak; the testimony of a crack-addled witness who thought she saw a gold SUV speeding away from the murder scene, and Cooper being stopped in his gold SUV, twenty miles away and three hours after the murder.  A reasonable jury could discredit that testimony in favor of the testimony of Philip Long, who testified that he heard the gunshots and drove his gold SUV to the murder scene in short succession, as well as called 911.  In contrast, the

---

[20]Doc. 675.

[21]Doc. 700.

[22]*United States v. Velarde*, 485 F.3d 553, 561 (10th Cir. 2007).

8

evidence in Roberson's trial was substantial that Roberson killed Fisher, and that Webb aided,

abetted, participated, counseled, and conspired with Roberson to accomplish the killing.   In this

respect, the evidence does not satisfy the materiality standard of *Brady.*

Webb posits that he could have used this information to impeach Cooper's testimony.

Notably, Cooper's testimony inculpated Webb with respect to all three charges.  Cooper testified

that he was a drug dealer and that he was supplied crack cocaine and powder cocaine by the

Webb and Roberson organization over a period of years.  Cooper testified that at Webb's

request, about a week before the Fisher murder, Cooper obtained a .40 caliber Glock for Webb,

who requested it in order to pistol whip someone over a drug debt.  Cooper identified the .40

caliber Glock recovered from a pond in an area where Roberson was in the hours after the

murder.  Cooper testified to various incriminating statements Webb and Roberson made to him

about Roberson killing Fisher, about Webb supplying the gun to Roberson, about  Roberson

disposing of the gun, and the need to kill Fisher to keep her from informing on them.

To be sure, Cooper provided inculpatory evidence on Webb, although much of Cooper's

testimony was corroborated by the testimony of coconspirators, including Jamaica Chism,

Jermaine Jackson, Raschon Smith, Megan Fuller, Ria Roberson and others.[23]  Thus,

impeachment information about Cooper falls within the bounds of *Brady* and *Giglio.*  But,

impeachment information "may not be material if the State's other evidence is strong enough to

---

[23]This Court severed codefendant Kennin Dewberry's trial, and a jury convicted him of Counts 1 and 2, the conspiracy counts.  The Tenth Circuit Court of Appeals affirmed Dewberry's conviction and sentence. *United States v. Dewberry*, —F.3d—, 2015 WL 3853576 (10th Cir. June 23, 2015).  This Court also severed the trial of codefendant Roberson, whom the jury convicted of Counts 1, 2 and 3.  One day after the Roberson verdicts, Webb pled guilty, before the date of his scheduled trial.   Substantial evidence about Webb aiding and abetting Roberson in killing Fisher (Count 3) was heard in Roberson's trial.  And substantial evidence about Webb conspiring to distribute crack and powder cocaine (Counts 1 and 2), was heard in the trials of Roberson and Dewberry.

sustain confidence in the verdict."[24]   Again, as detailed in the Roberson Memorandum Order and

Opinion, this information about Cooper was not strong enough to shake this Court's confidence

in the verdict against Roberson, and for the same reason, would not be strong enough to shake

confidence in a guilty verdict against Webb on Count 3, much less on Counts 1 and 2 of the

Superseding Indictment.

### B.      No showing of right to withdraw plea under *Gordon* factors

Webb argues that under the seven-factor test in *United States v. Gordon*,[25] he has

established grounds for withdrawal of his plea.   The *Gordon* factors are: (1) whether the

defendant has asserted his innocence; (2) whether withdrawal would prejudice the government;

(3) whether the defendant delayed in filing the motion, and if so, the reason for any delay; (4)

whether withdrawal would substantially inconvenience the court; (5) whether defendant had

close assistance of counsel; (6) whether the plea was knowingly and voluntarily made; and (7)

whether withdrawal of the plea would waste judicial resources.[26]  "It is within the sound

discretion of the [district] court to determine what circumstances justify granting such a

motion."[27]  The Court declines to address those *Gordon* factors pertaining to delay by the

defendant, prejudice to the government, inconvenience to the court and waste of judicial

resources, for if the defendant cannot show assertion of innocence, lack of close assistance of

counsel and that the plea was not knowingly and voluntarily made, the defendant fails the

---

[24]*Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (*citing United States v. Agurs*, 427 U.S. 97, 112–113, and n. 21 (1976)).

[25]4 F.3d 1567 (10th Cir.1993).

[26]*Id.* at 1572.

[27]*Id.* (quoting *United States v. Wade*, 940 F.2d 1375, 1377 (10th Cir. 1991)).

*Gordon* test for permissible withdrawal of his plea.[28]

First, Webb asserts "legal innocence," not factual innocence.  Presumably his claim of legal innocence is based on his claim of a *Brady/Giglio* violation.[29]  A claim of legal innocence may satisfy the first *Gordon* factor in some instances, but mere assertion of a legal defense is insufficient; the defendant must present a credible claim of legal innocence.[30]  But, for the reasons discussed above, the Court finds that Webb has not presented a credible claim of legal innocence based on a *Brady* or *Giglio*, for there was no such violation.

Even assuming that Webb has asserted a credible claim of legal innocence, he fails to show that the plea was not knowingly and voluntarily made.  Other than not knowing this impeachment information about Cooper, Webb does not claim that his plea was tainted by a lack of knowledge or involuntariness.  Webb cites to *United States v. Wright*,[31] arguing that a *Brady* violation can render a plea involuntary.   But Webb fails to meaningfully address the Supreme Court's decision in *United States v. Ruiz*,[32] handed down eight years after *Wright*, and its impact on this case.  In *Ruiz*, the Court considered "whether the Fifth and Sixth Amendments require federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose 'impeachment information relating to any informants or other witnesses.'"[33]  The Court

---

[28]*United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir.2009) (district court need no address the delay, prejudice, inconvenience or waste factors unless the defendant has first established a fair and just reason for withdrawal of his plea).

[29]*See United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir.2007).

[30]*Id.*

[31]43 F.3d 491, 496 (10th Cir.1994).

[32]536 U.S. 622 (2002).

[33] *Id*. at 625 (citation omitted).

concluded that "the Constitution *does not* require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."[34]  The Court explained that  "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*."[35]  The Court went on to state that:

> It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant. The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case—a matter that the Constitution does not require prosecutors to disclose.[36]

In the end, "*Ruiz* teaches that *Brady* does not protect against the possible prejudice that may ensue from the loss of an opportunity to plea-bargain with complete knowledge of all relevant facts."[37]

   In short, Webb cannot establish that his guilty plea was entered unknowingly, involuntarily or unintelligently solely because he was not aware that Antonio Cooper provided a statement in a wholly unrelated homicide investigation that occurred approximately 13 years before Webb entered his guilty plea.  Nor can Webb demonstrate that the information about Cooper would have "significantly strengthened [his] hand in plea negotiations even if [this information] had been available to him from the start."[38]  Nor does Webb explain in any way

---

[34]*Id*. at 633 (emphasis supplied).

[35]*Id*. at 630 (emphasis in original).

[36]*Id*.

[37]*United States v. Johnson*, 369 F. App'x 905, 906 (10th Cir. 2010).

[38]*United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010).

how knowledge of this information about Cooper would have played any role in his decision to enter a guilty plea.

Finally, Webb suggests that he did not have "close assistance of counsel," because he had a "strained" relationship with his counsel, Jacquelyn Rokusek.  Webb pled guilty on March 7, 2014, and on April 5, 2014 Ms. Rokusek moved to withdraw as counsel after Webb wrote a letter to the Disciplinary Administrator that he and Ms. Rokusek had suffered from a "lack of communication," including him not having "knowledge of any upcoming court dates."  Ms. Rokusek represented Webb from August 29, 2011 until this Court allowed her to withdraw in April 2014.  Ms. Rokusek, along with co-counsel Lance Sandage, whom the Court appointed to replace her in April 2014, successfully represented Webb during the phase of this case in which the government was advocating for this case to be death penalty qualified.

After the Department of Justice declined to approve a death penalty qualification, Mr. Sandage withdrew as cocounsel and Ms. Rokusek continued to represent Webb.  Although Webb filed pro se  motions to withdraw Ms. Rokusek, he did not complain about the quality of representation.  Indeed, in the November 1, 2011 pro se motion, he complained about a lack of communication about upcoming court dates because Ms. Rokusek does not accept collect calls, but characterized Ms. Rokusek as "a great lawyer," "doing above and beyond her job duties."[39] At a hearing on his motion, Webb withdrew his request for new counsel.  On July 14, 2013, Ms. Rokusek and Mr. Sandage, who is currently Webb's counsel, filed a joint motion to withdraw[40] because Webb had told them he wanted new appointed lawyers.  At a hearing on August 26,

---

[39]Doc. 75.

[40]Doc. 352.

2013, Webb orally withdrew that motion.

Then, on February 18, 2014, Ms. Rokusek filed a motion to withdraw,[41] because Webb had written her a letter indicating he refused to communicate with her any more, before, during or after trial.  The Court denied that motion after a hearing, because Webb indicated he would in fact communicate with Ms. Rokusek.   On March 6, 2014, Ms. Rokusek filed *in limine* motions, in preparation for Webb's scheduled trial on March 18, 2014.[42]

Then, after the jury convicted Roberson of all three counts on March 6, 2014, Webb indicated that he wanted to plead guilty.  The next day, March 7, 2014, the parties filed their plea agreement and the court accepted Webb's plea.  Contrary to Webb's characterization, this was not an "eleventh hour" plea; it occurred on March 7, eleven days before Webb's scheduled trial date of March 18, 2014.[43]  And notably, Webb indicated a desire to plead guilty, the very day after Roberson was convicted on all charges, and after Webb had the benefit of knowing how the evidence was presented and how it was received by the jury.

In short, Webb had close assistance of counsel throughout this case; first with Ms. Rokusek, then with Ms. Rokusek and Mr. Sandage jointly while the case was pending death penalty qualification.  Throughout that period, Webb periodically sought new counsel other than Ms. Rokusek and Mr. Sandage, only to relent at every hearing on the motions to withdraw, except the last motion to withdraw, which he filed after he entered his plea.  Webb has made no showing that he lacked close assistance of counsel.  On the contrary, as the docket sheet in this

---

[41]Doc. 493.

[42]Doc. 507.

[43]Doc. 427.

case reveals, Webb had close assistance of counsel by one or more attorneys throughout this proceeding, who engaged in zealous, professional, and experienced advocacy.

Accordingly, Webb has not shown a fair and just reason for withdrawal of his plea of guilty, and his request is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Withdraw Plea (Doc. 684) is DENIED.

**IT IS SO ORDERED.**

Dated: July 14, 2015

S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE