**In the United States District Court
for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation**,
                     **Petitioners,**

**v.**                                   **Case No. 19-cv-2491-JAR-JPO**

                                         **(This Document Relates to Case No. 11-cr-40078-JAR-1, *United States v. Virok Webb*, and Case No. 17-cv-4040-JAR-JPO, *Virok Webb v. United States*)**

**United States of America.**
                     **Respondent.**

---

## MEMORANDUM AND ORDER

On June 5, 2017, Petitioner Virok Webb filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 809), claiming that both his trial and appellate counsel provided ineffective assistance.[1]  After the government responded,[2] but before the Court could rule on his § 2255 motion, Webb moved for leave to amend to add a claim alleging that the government violated the Sixth Amendment by intentionally intruding upon his attorney client communications (Doc. 856), which the government opposed.  Webb subsequently renewed the motion at the Court's request in order to provide additional briefing regarding the events that that had transpired since the motion was originally filed.[3]  The government also

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 11-40078-JAR-1.  Citations prefaced with "*CCA Rec. Lit.*, Doc." refer to filings and entries in this consolidated case, No. 19-2491-JAR-JPO.  With the exception of *United States v. Carter*, No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] Doc. 820.

[3] *Webb v. United States*, No. 17-4040-JAR-JPO, Doc. 7.

objects to Webb's renewed motion for leave.[4]  Webb was granted an extension until March 29,

2021, to file a certification of his § 2255 motions as required by Rule 2(b) of the Rules

Governing Section 2255 Proceedings.[5]

For the reasons explained in detail below, the Court denies Webb's motion for leave to

amend to add an intentional-intrusion Sixth Amendment claim and denies the claims raised in

Webb's § 2255 motion on the merits and without an evidentiary hearing.

## I.    Factual and Procedural Background

### *Underlying Criminal Proceedings*

On October 19, 2011, Webb and seven co-defendants were charged with conspiracy to

distribute 280 grams or more of crack cocaine (Count 1) and conspiracy to distribute 5 kilograms

or more of powder cocaine (Count 2).[6]  Webb, along with co-defendant Marcus Roberson, was

additionally charged with one count of murder to prevent another from providing information

concerning a federal crime to a law enforcement officer of the United States, in violation of 18

U.S.C. § 1512(a)(1)(C).[7]

On March 7, 2014, the day after co-defendant Roberson was convicted by a jury, Webb

entered a binding guilty plea to one count of conspiracy to distribute 280 grams or more of crack

cocaine.[8]  In the Plea Agreement, the parties proposed a term of imprisonment between 20 and

30 years as an appropriate sentence; in exchange, the government agreed to dismiss the second

drug conspiracy charge as well as the murder charge, and limited its § 851(a)(1) information to

---

[4] *Id.*, Doc. 9.

[5] *CCA Rec. Lit.*, Doc. 782.

[6] Doc. 50, Superseding Indictment.

[7] *Id.*

[8] Docs. 511, 512.

one prior felony drug conviction, resulting in a mandatory minimum sentence of 20 years rather than life imprisonment.[9]  Sentencing was delayed when counsel was granted leave to withdraw[10] and newly appointed counsel sought multiple motions to continue.[11]

Approximately one year later, on February 23, 2015, Webb moved to withdraw his guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(B).[12]  Webb maintained that the government breached the Plea Agreement by failing to disclose *Brady/Giglio*[13] material, which "created a substantial change in circumstances."[14]  Specifically, Webb argued that through co-defendant Roberson's counsel, he discovered evidence that government witness Antonio Cooper was involved in a homicide investigation in 2001, that this information was exculpatory or impeachment evidence that the government should have disclosed, and that had he known this information about Cooper, he would not have entered into the Plea Agreement.  Webb further argued that he had a "strained relationship" with his previous counsel and therefore should be allowed to withdraw his guilty plea.[15]

A hearing was held June 15, 2015, on Webb's motion to withdraw his plea.[16]  On July 14, 2015, this Court denied Webb's motion, concluding:

> In short, Webb cannot establish that his guilty plea was entered unknowingly, involuntarily or unintelligently solely because he was not aware that Antonio Cooper provided a statement in a wholly unrelated homicide investigation that occurred approximately 13 years before Webb entered his guilty plea.  Nor can Webb

---

[9] Doc. 512 at 2–3.

[10] Docs. 547, 553.

[11] Docs. 572, 584, 668, 682.

[12] Doc. 684.

[13] *Brady v. Maryland,* 373 U.S. 83 (1963); *Giglio v. United States,* 405 U.S. 150 (1972).

[14] Doc. 684 at 1.

[15] *Id.* at 12.

[16] Doc. 699.

demonstrate that the information about Cooper would have "significantly strengthened [his] hand in plea negotiations even if [this information] had been available to him from the start." Nor does Webb explain in any way how knowledge of this information about Cooper would have played any role in his decision to enter a guilty plea. . . . Webb had close assistance of counsel throughout this case; first with Ms. Rokusek, then with Ms. Rokusek and Mr. Sandage jointly while the case was pending death penalty qualification. Throughout that period, Webb periodically sought new counsel other than Ms. Rokusek and Mr. Sandage, only to relent at every hearing on the motions to withdraw, except the last motion to withdraw, which he filed after he entered his plea. Webb has made no showing that he lacked close assistance of counsel. On the contrary, as the docket sheet in this case reveals, Webb had close assistance of counsel by one or more attorneys throughout this proceeding, who engaged in zealous, professional, and experienced advocacy. . . . Accordingly, Webb has not shown a fair and just reason for withdrawal of his plea of guilty, and his request is denied.[17]

A presentence investigation report ("PSIR") was prepared using the 2014 Guidelines Manual.[18] The PSIR calculated that Webb's base offense level for the conspiracy to distribute crack cocaine would be 34 based on drug quantity of 18,625.72 kilograms of marijuana (4,609.31 grams of crack cocaine), with a total offense level of 39 after application of both sentence enhancements and reductions.[19] However, the PSIR calculated the base offense level at 43 for the following reasons:

Pursuant to United States Sentencing Guidelines § 2D1.1(d)(1), if a victim was killed under any circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline. Pursuant to the 2014 Guidelines Manual, the defendant's base offense level is thirty-four. With a two level adjustment for possession of a dangerous weapon

---

[17] *United States v. Webb,* No. 11-40078-01, 2015 WL 4275949, at *6–7 (D. Kan. July 14, 2015) (citations omitted).

[18] Doc. 710.

[19] *Id.* ¶ 74.

> (2D1.1(b)(1)), another two level adjustment in accordance with 2D1.1(b)(2), a four level adjustment in reference to 3B1.1(a) and a three level reduction pursuant to 3E1.1(a) and (b), the defendant's total offense level under 2D1.1 guideline is 39.  As the guideline pursuant to § 2A1.1, results in a higher guideline, § 2A1.1 will be the offense level utilized.[20]

Webb's total offense level was thus calculated at 40, with a criminal history category of III, resulting in a guideline range of 360 months to life.[21]  Pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), the statutory minimum sentence in this case is 20 years.  Webb objected to the cross-reference to U.S.S.G. § 2A1.1.[22]  The government responded, and the United States Probation Office concluded that the cross-reference was warranted.[23]

Webb again raised the objection to the cross-reference to § 2A1.1, as well as to the drug quantities attributed to him, in a sentencing memorandum.[24]  At the sentencing hearing on August 27, 2015, the government submitted transcripts of the proceedings for co-defendants Roberson and Kennin Dewberry, over which this Court also presided.[25]  The government argued that it had proved by a preponderance of the evidence that Webb was involved in the murder of Crystal Fisher, and thus this Court could sentence Webb based on the cross-reference to § 2A1.1, with no reason to engage in calculation of the drug quantities in this case beyond the 280 grams of crack cocaine that Webb admitted to distributing pursuant to the Plea Agreement.[26]  Although the Court agreed with the premise of government's argument, it proceeded to rule on the objection to the drug quantities lodged by Webb, finding the amounts set forth in the PSIR were

---

[20] *Id.*

[21] *Id.* ¶ 133.

[22] *Id.* ¶ 181.

[23] *Id.* ¶¶ 182–83.

[24] Doc. 709.

[25] Doc. 724 at 5–6, Tr. Sentencing Hr'g, Ex. 2.

[26] *Id.* at 6–13.

correct and accurate beyond a preponderance of the evidence because of the weight of the evidence the Court heard in the two co-defendants' trials.[27]  The Court also overruled Webb's objection to the cross-reference to § 2A1.1.  The Court detailed the evidence that lead it to conclude by a compelling preponderance of the evidence that Roberson killed Fisher at the direction of Webb.[28]  Pursuant to the binding Plea Agreement, the Court sentenced Webb to a controlling term of 360 months' imprisonment.[29]  Webb filed a notice of appeal the same day.[30]

### Direct Appeal to the Tenth Circuit

On appeal, Webb argued that "(1) the [Court] erred in denying his motion to withdraw his guilty plea; (2) his counsel was ineffective in the negotiation of the plea; (3) the prosecution violated *Brady/Giglio* in failing to disclose the information about Mr. Cooper before the plea agreement; and (4) [this Court] erred in applying the Sentencing Guidelines."[31]  The government moved to enforce the waiver of appellate rights in the Plea Agreement concerning issues one and four raised by Webb.  Webb's appellate counsel filed a response to the government's motion, stating that there were no non-frivolous grounds upon which to oppose the motion, and further sought to withdraw under *Anders v. California*.[32]  The Tenth Circuit Court of Appeals informed Webb that counsel filed an *Anders* brief, and gave him the opportunity to file a document showing why the court should not enforce the waiver of his right to appeal and to object to the dismissal of his appeal.  Webb submitted a response arguing that the appeal waiver was not

---

[27] *Id.* at 23–27.

[28] *Id.* at 27–34.

[29] Doc. 715.

[30] Doc. 713.

[31] *United States v. Webb*, 651 F. App'x 740, 742 (10th Cir. 2016).

[32] 386 U.S. 738 (1967).

enforceable and that he was prevented from presenting evidence to rebut this Court's conclusion that there was sufficient evidence to support the cross-reference to § 2A1.1.

On January 14, 2016, the Tenth Circuit issued an order sustaining the government's motion to enforce the appeal waiver with respect to issues one and four, and further dismissing Webb's claim of ineffective assistance of counsel.  Webb's appellate counsel then filed an *Anders* brief addressing the remaining issue of whether the government violated Webb's rights under *Brady/Giglio*.  Webb was given the opportunity to respond, and argued that (1) this Court abused its discretion in relying upon information from related trials to support the cross-reference to § 2A1.1, and further failed to permit Webb an opportunity to rebut such evidence; and (2) this Court abused its discretion when it denied Webb's motion to withdraw his plea because the government failed to disclose exculpatory evidence.  The Tenth Circuit ultimately determined that Webb's appeal was "wholly frivolous" and denied him relief.[33]  Webb's timely *pro se* § 2255 motion followed on June 5, 2017.[34]

### Black Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black Order*") that precipitates the matters before the Court.[35]  That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as

---

[33] *Webb*, 651 F. App'x at 745.

[34] Doc. 809; 28 U.S.C. § 2255(f).

[35] No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).  As discussed in that Order, petitioners' Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience, the Court refers to it as CCA in this Order.

needed to frame its discussion of the issues presently before it.  The Court appointed the Federal Public Defender ("FPD") to represent Webb in his § 2255 proceedings on July 17, 2018.[36]  The FPD subsequently moved for leave to amend on Webb's behalf to allege a Sixth Amendment claim, seeking relief based on events that came to light in *Black*, including the existence of audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA.[37]

The *Black* investigation revealed in relevant part that CCA recorded some of the outgoing phone calls between detainees and their counsel using equipment provided by Securus Technologies, Inc. ("Securus").[38]  The Court discussed in detail the flaws in CCA's privatization procedures and noted that as a result of these flaws, "calls between defense attorneys and clients at CCA were routinely recorded even when the attorney properly requested privatization."[39]  The Court further detailed how prosecutors at the Kansas City Office of the United States Attorney ("USAO") not only knew that CCA recorded such calls, but that they could obtain the resulting recordings by making "a general request for detainee calls."[40]  The Court found that the government routinely made requests for detainee calls—without taking any precautionary measures to avoid protected communications—and routinely received recordings of attorney-client calls as a result.[41]

---

[36] D. Kan. Standing Order 18-3 (July 17, 2018), http://www.ksd.uscourts.gov/wp-content/uploads/2018/07/Standing-Order-18-3-Appointing-FPD.pdf.

[37] Doc. 856.

[38] *Black* Order at 5, 80, 85.

[39] *Id.* at 80–88.

[40] *Id.* at 106.

[41] *Id.* at 101–06.

On August 13, 2019, this Court issued the *Black* Order, addressing in relevant part the applicable standard for Webb's Sixth Amendment claim in the Tenth Circuit.[42]  Under *Shillinger v. Haworth*, a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[43]  Once those elements are established, prejudice is presumed.[44]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[45]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists; (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client; and (3) an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[46]

---

[42] *Id.* at 162.

[43] *Id.* (citing *Shillinger*, 70 F.3d 1132, 1142 (10th Cir. 1995)).

[44] *Id.*

[45] *Id.* at 163.

[46] *Id.* at 166.

Finally, the *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[47]  The Court assumes the reader is familiar with the proceedings in the consolidated master case that precipitate the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

 In his proposed amended claim, Webb alleges that in May 2016, after he pleaded guilty and was sentenced, the government obtained recordings of four phone calls he made to his trial attorney, Jackie Rokusek, while he was detained at CCA.  These calls were made between September 16, 2011 and March 26, 2014.[48]  It is undisputed that these calls were obtained by the government as part of the *Black* investigation and produced to the Court in response to an August 2016 claw-back order.[49]  The government confirmed its possession of the calls in a status report to the Court and copies of those recordings were provided to the FPD on April 29, 2020.[50]  Webb does not allege that the individual prosecutors in his underlying criminal case, AUSA Tony Mattivi or AUSA Jared Maag, obtained his attorney-client calls during the pendency of his criminal case.  Instead, he alleges that his calls were obtained in the *Black* case and investigation while he was in BOP custody serving his sentence and while his case was pending on appeal, and suggests that Rokusek was the target of the USAO.[51]  Webb asserts that his amended claim

---

[47] *CCA Lit.*, Doc. 1.

[48] *See id.*, Doc. 205-2 at 227–29.

[49] *Webb*, No. 17-4040-JAR-JPO, Doc. 12 at 2.

[50] *Id.*

[51] *Id.* at 3.

should be evaluated within the framework of the *Black* Order and investigation, not the underlying Topeka prosecution.

## II.    Discussion

The Court addresses Webb's motion for leave to amend before reaching the merits of his § 2255 motion.

### A.    Motion for Leave to Amend

Webb seeks to add a claim that the government violated the Sixth Amendment by intentionally intruding into his attorney client relationship by becoming privy to audio recordings of his phone calls with counsel while he was detained at CCA.  The government opposes Webb's motion and argues that it is both untimely and lacks substantive merit.

Fed. R. Civ. P. 15(a)(2) governs a motion to amend a § 2255 motion if it is made before the one-year limitations period for filing a § 2255 petition has expired.[52]  Under Rule 15(a)(2), "a movant may file an amended § 2255 motion at any time during post-conviction proceedings with leave of court."[53]  An amendment only relates back to the original pleading, however, when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading."[54]  Without a claim relating back, a motion under § 2255 must be brought within a year from "the date on which the judgment of conviction becomes final."[55]

For untimely § 2255 amendments made outside of the one-year window, a claim will only relate back if, "by way of additional facts, [the amendment] clarifies or amplifies a claim or

---

[52] *United States v. Ohiri*, 133 F. App'x 555, 559 (10th Cir. 2005).

[53] *United States v. Roe*, 913 F.3d 1285, 1296 (10th Cir. 2019) (citing Fed. R. Civ. P. 15(a)(2)).

[54] Fed. R. Civ. P. 15(c)(1)(B).

[55] 28 U.S.C. § 2255(f)(1).

theory in the original motion."[56]  However, if the "proposed amendment . . . seek[s] to add a new claim or to insert a new theory into the case," it does not relate back to the original motion.[57] "[T]he operative question for" relation-back "is whether 'the original and amended [motions] state claims that are tied to a common core of operative facts.'"[58]  "The answer to that question will often turn on whether the newly asserted claim would have had to be pleaded as a discrete claim under Section 2255 Rule 2(b) if it was set out in the original § 2255 motion."[59]

Here, Webb's judgment of conviction became final for purposes of § 2255(f)(1) on August 31, 2016.[60]  To fall within the one-year window, any § 2255 motion or amendment must have been filed by August 31, 2017.  Although Webb's *pro se* § 2255 motion was timely filed, his July 9, 2019 motion for leave to amend was filed outside of the one-year window.  Thus, to relate back to his original § 2255 motion, the amendment must not "add a new claim or [ ] insert a new theory into the case."[61]

Webb seeks to add a new intentional-intrusion Sixth Amendment claim.  His original § 2255 motion is based solely on claims of ineffective assistance of trial and appellate counsel.  Thus, Webb would have been required to plead this claim separately from his original claims, and the facts necessary to prove the amended claim are separate from those facts necessary to prove the actual ineffective assistance of counsel claims.  The amended claim is brought under

---

[56] *Roe*, 913 F.3d at 1296 (quoting *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000)).

[57] *Id.*

[58] *Id.* at 1298 (quoting *United States v. Trent*, 884 F.3d 985, 992–93 (10th Cir. 2018)).

[59] *Id.*

[60] *See United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006) ("In the context of the one-year limitation period for filing a § 2255 motion, a criminal conviction becomes final when the Supreme Court affirms it on direct review, denies certiorari, or (in the absence of a certiorari petition) the time for filing a certiorari petition expires."). Webb filed a direct appeal and the Tenth Circuit affirmed his conviction on June 2, 2016. *United States v. Webb*, 651 F. App'x , 741 (2016). The time for filing a certiorari petition expired 90 days after this date, on August 31, 2016, and Webb's judgment of conviction became final on that date. *See* Sup. Ct. R. 13(1).

[61] *Roe*, 913 F.3d at 1296 (quoting *Espinoza-Saenz*, 235 F.3d at 505).

the Tenth Circuit decision in *Shillinger v. Haworth*, and requires Webb to establish the following prima facie case: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government became "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[62]  By contrast, the ineffective assistance of counsel claims are evaluated under the familiar two-prong analysis in *Strickland v. Washington*,[63] rely entirely upon the actions or inactions of Webb's trial and appellate counsel, and are unrelated to the conduct of the government at issue in his motion to amend.  Because Webb's amendment does not relate back to his original motion and falls outside the one-year limitations period, his motion for leave to amend is denied.

In so ruling, the Court notes two additional grounds justifying denial of Webb's request for leave to amend.  First, Webb cites to the scheduling order entered in the consolidated CCA § 2255 Litigation matter setting a deadline of February 28, 2020 for petitioners to amend their motions.[64]  On February 28, 2020, the FPD filed three "Supplements" to numerous petitioners' § 2255 motions.[65]  These supplements did not seek leave to add new claims but were filed on behalf of petitioners with pending § 2255 motions that had previously alleged intentional-intrusion claims filed before this Court issued the *Black* Order on August 13, 2019.  The supplements addressed those findings of fact and conclusions of law relevant to petitioners' claims,[66] or added audio recordings to their previous claims involving video recordings.[67]  By

---

[62] *Black* Order at 162 (citing *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995)).

[63] 466 U.S. 668 (1984).

[64] *CCA Rec. Lit.*, Doc. 83.

[65] *Id.*, Docs. 87, 88, 89.

[66] *Id.*, Doc. 87.

[67] *Id.*, Docs. 88, 89.

contrast, prior to entry of the scheduling order, the FPD moved for leave to amend several *pro se* motions to add new Sixth Amendment intentional-intrusion claims, including Webb's.  Two motions, which were unopposed, were filed within the one-year window to do so under § 2255(f)(1), and thus were not required to relate back to petitioners' original claims.[68]

Second, Webb's Sixth Amendment intentional-intrusion claim is futile.  It is well-settled that in ruling on a motion for leave to amend, courts are instructed to "freely give leave when justice so requires," and to deny leave to amend only when an apparent reason, "such as . . . futility of amendment," exists.[69]  Thus, "a court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason."[70] As previously discussed, Webb specifically alleges the Sixth Amendment violation occurred after he was sentenced on August 27, 2015, when SAUSA Erin Tomasic subpoenaed his calls from CCA as part of the *Black* case in May 2016.  After the government was permitted to supplement the record, the FPD confirmed that it revisited the relevant Securus records and, based on the available evidence, Webb cannot prove that anyone actually accessed the relevant audio recordings until after he was sentenced, leaving no redressable injury.[71]

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  Federal courts must have a statutory or constitutional basis to

---

[68] *See United States v. Morris*, No. 16-20022-JAR-03, Doc. 150 (D. Kan. Oct. 16, 2018); *United States v. Jones*, No. 15-20091-JAR-01, Doc. 125 (D. Kan. Oct. 16, 2018).

[69] Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178 (1962); *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

[70] *Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012) (citation omitted).

[71] *See Webb*, No. 17-4040-JAR-JPO, Doc. 19; *CCA Rec. Lit.*, Doc. 793 at 8–9.  The FPD continues to maintain that the earliest date an audio recording could *potentially* be accessed is the date the recording was created but, after reviewing the evidence, agrees that Webb cannot prove that his recordings were *actually* accessed on the Securus Call Platform before he was sentenced.  *Id.* at 8 n.16.

exercise jurisdiction.[72]  And, without jurisdiction, a court must dismiss the case.[73]  Courts thus must determine, either *sua sponte* or upon a challenge by a party "at any stage in the litigation," whether subject matter jurisdiction exists.[74]  Article III's case-or-controversy requirement applies at all stages of litigation.[75]  There are three basic elements of standing: (1) an injury, (2) a causal connection between that injury and conduct complained of in the motion, and (3) the likelihood that court action could redress that injury.[76]  To demonstrate causation, a party must show that their alleged injury is "fairly traceable" to the complained of conduct.[77]  "Article III . . . require[s] proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."[78]  "When '[s]peculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,' this burden has not been met."[79]

As this Court discussed in its January 18, 2021 Order in the consolidated § 2255 proceedings, when the alleged intrusion occurs after the petitioner was sentenced, "the intrusion cannot be tied to any claimed unfairness or impropriety in the conviction, plea, or sentencing process.  Without such a nexus, these petitioners cannot proceed with claims challenging either their conviction or sentences."[80]  Falling squarely into this category, the Court concludes that Webb lacks standing to challenge his conviction and sentence and any Sixth Amendment

---

[72] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

[73] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

[74] *Arbaugh,* 546 U.S. at 506 (explaining that challenges to subject matter jurisdiction "may be raised . . . at any stage in the litigation, even after trial and the entry of judgment.").

[75] *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

[76] *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 2021 WL 850106, at *2 (2021).

[77] *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (*citing Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)).

[78] *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).

[79] *Id.* at 1157 (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)).

[80] *See CCA Rec. Lit.*, Doc. 730 at 53.

intentional-intrusion claim would be dismissed for lack of jurisdiction.  This conclusion does not change because Webb's appeal was pending in May 2016, as by that time, the Tenth Circuit had granted in part the government's motion to enforce the plea waiver and on June 2, 2016, affirmed the remaining claims as "wholly frivolous" after appellate counsel filed an *Anders* brief.[81]  Thus, Webb's amended claim would be subject to dismissal for lack of standing to pursue § 2255 relief, and is futile.  For all these reasons, the Court denies Webb leave to amend his § 2255 motion.

### B.      Ineffective Assistance of Counsel Claims

Webb raises four distinct claims that trial and appellate counsel were ineffective: (1) appellate counsel was ineffective for failing to challenge the cross-reference under U.S.S.G. § 2A1.1; (2) appellate counsel was ineffective for failing to challenge on appeal the amount of cocaine attributable to Webb; (3) trial counsel was ineffective for persuading Webb to enter a guilty plea to an offense under 21 U.S.C. § 841(b)(1)(A)(iii), which had a threshold weight of 280 grams or more of cocaine base; and (4) appellate counsel was ineffective for failing to argue that the cross-reference to § 2A1.1 violated the Supreme Court's decision in *Alleyne v. United States*.[82]

### 1.      Standard

Section 2255 entitles a federal prisoner to relief if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[83]

---

[81] *United States v. Webb*, 651 F. App'x 740, 745 (10th Cir. 2016).

[82] 570 U.S. 99 (2013).

[83] 28 U.S.C. § 2255(b).

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[84]  A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[85]  An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[86]

The Sixth Amendment guarantees that "[i]n all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[87]  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[88]  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[89]  To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[90]  This standard is "highly demanding."[91]  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[92]  In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A]

---

[84] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

[85] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[86] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) ("[T]he allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

[87] U.S. Const. amend. VI; *see Kansas v. Ventris*, 556 U.S. 586 (2009).

[88] 466 U.S. 668 (1984).

[89] *Id.* at 688.

[90] *Id.* at 690.

[91] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[92] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[93]  Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error, and "every effort should be made to 'eliminate the distorting effects of hindsight.'"[94]

Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[95]  To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[96]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[97]  This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[98]

A defendant is entitled to the effective assistance of counsel during plea negotiations.[99] "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."[100]  "To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and [would have] insisted on going to trial.'"[101]

---

[93] *Strickland*, 466 U.S. at 687.

[94] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[95] *Strickland*, 466 U.S. at 687.

[96] *Id.* at 694.

[97] *Id.*

[98] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[99] *Lafler v. Cooper,* 566 U.S. 156, 162–63 (2012).

[100] *Id.* at 163 (internal quotation marks omitted).

[101] *Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

Claims of ineffective assistance of appellate counsel are also governed by *Strickland's* standards.  To prove that appellate counsel was ineffective under *Strickland*, a defendant must show "(1) constitutionally deficient performance, by demonstrating that his appellate counsel was objectively unreasonable, and (2) resulting prejudice, by demonstrating that but for counsel's unprofessional error(s), the result of . . . appeal . . . would have been different."[102] Although "[a] claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, . . . counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."[103]  The strength of the omitted issue guides the court's assessment of the ineffectiveness claim.  "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance."[104]  "[I]f the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission."[105]  And "if the issue is meritless, its omission will not constitute deficient performance."[106] As the Tenth Circuit has explained, the omission of a "dead-bang winner" by counsel is deficient performance that may result in prejudice; a dead-bang-winner is "an issue

---

[102] *United States v. Turrentine*, 638 F. App'x 704, 705 (10th Cir. 2016) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.*

which was obvious from the trial record *and* one which would have resulted in a reversal on appeal."[107]

In all events, a defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[108]  "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[109]

### 2.    Application

### a.    Cross-reference to U.S.S.G. § 2A1.1

On appeal, counsel for Webb did not contest the government's motion to enforce the Plea Agreement.  Webb then filed a *pro se* response with the Tenth Circuit arguing that this Court failed to give him an opportunity to contest the cross-reference to § 2A1.1 in calculating his base offense level.  As appellate counsel believed, and the Tenth Circuit affirmed, however, Webb waived his right to appeal any sentencing issues.[110]  Accordingly, appellate counsel cannot be considered ineffective under *Strickland* for failing to raise issues that Webb himself agreed to waive on appeal as set forth in the binding Plea Agreement.

---

[107] *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *United States v. Cook*, 45 F.3d 388, 394 (10th Cir. 1995)).

[108] *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[109] *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland*  prong is the easier to resolve.").

[110] *See* Doc. 820, Attach. G (holding Webb "waived his right to raise an issue on appeal challenging the district court's denial of his motion to withdraw or its reliance on the government's evidence of his complicity in Crystal Fisher's murder and its reference to the sentencing guideline for murder in determining what sentence to impose within the range stipulated in the plea agreement").

Likewise, Webb's argument that appellate counsel was ineffective for filing a frivolous appeal is without merit.  As the government argues, Webb's claim is akin to challenging his counsel's decision to file an *Anders* brief in this case, which fails given that "[t]he submission of an *Anders* brief does not meet the *Strickland* standard for ineffective assistance if the request to withdraw is granted by the court."[111]  Instead, Webb would only have a valid challenge to appellate counsel's representation on these grounds under circumstances where counsel sought to withdraw without filing an *Anders* brief.[112]  In this case, counsel satisfied the requirements of *Anders* by filing the proper submissions and simultaneously seeking to withdraw.  The Tenth Circuit granted counsel's request and found Webb's appeal to be "wholly frivolous."[113]  Accordingly, appellate counsel's representation cannot be deemed ineffective.

Nor can Webb satisfy the prejudice prong under *Strickland*, as the application of § 2A1.1 was appropriate in this case.  This Court applied a preponderance of the evidence standard in determining whether the government met its burden of establishing that Webb was involved in killing Fisher under circumstances that would constitute first degree murder under 18 U.S.C. § 1111.[114]  In making this determination, the Court relied on the trial transcripts and testimony presented in the trials of co-defendants Dewberry and Roberson, cases over which this Court also

---

[111] *Cobb v. United States*, 496 F. Supp. 2d 215, 219 (N.D.N.Y. 2006); *United States v. Main*, No. 98-CR-62-2, 2008 WL 4559837, at *4 (D. Vt. Oct. 9, 2008) (in granting appellate counsel's motion to be relieved following submission of *Anders* brief, Court of Appeals inherently affirmed that counsel had met the proper standards of reasonableness).  *See also United States v. Nash*, 229 F. App'x 700, 702 (10th Cir. 2007) ("The mere filing of an *Anders* Brief cannot form the basis for a claim of ineffective assistance of counsel.") (quoting *United States v. Martinez-Lomeli*, 86 F.3d 1167 (10th Cir. 1996))).

[112] *See Penson v. Ohio*, 488 U.S. 75, 86–89 (1988).

[113] *United States v. Webb*, 651 F. App'x 740, 744–45 (10th Cir. 2016).

[114] *See United States v. Ramos*, 695 F.3d 1035, 1039 (10th Cir. 2012) (citation omitted) (explaining the government bears the burden of proving sentencing enhancements by a preponderance of the evidence).

presided.  The evidence established that Webb orchestrated Fisher's murder, as summarized in

paragraph 58 of the PSIR:

> The investigation into Fisher's murder demonstrated Webb and Roberson orchestrated Fisher's murder on the belief Fisher had informed law enforcement about the activities of Webb's drug trafficking organization.  The investigation further revealed Roberson murdered Fisher at Webb's direction.  Both Webb and Roberson had prior federal and state narcotics convictions and thus there was a reasonable likelihood had Fisher been able to further communicate with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.  Webb and Roberson, however, prevented Fisher's communication to a federal officer after learning of her communication with state law enforcement officials earlier on March 2nd, and as a result of that meeting arranged for and carried out Fisher's murder.[115]

Thus, direct application of § 2A1.1 was appropriate and appellate counsel was not ineffective by

concluding that a challenge to the cross-reference on appeal was "wholly frivolous."

Webb's attempt to employ Amendment 790 to support his claim is also misplaced.  On

November 1, 2015, U.S.S.G. § 1B1.2(a)(1)(B) went into effect, redefining "relevant conduct" in

the case of jointly undertaken activity to include: "all acts and omissions of others that were—(i)

within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal

activity, and (iii) reasonably foreseeable in connection with that criminal activity."[116]  Webb

contends that this Court failed to determine the first prong of the clarified relevant conduct

Guideline.  As previously discussed, the evidence established Webb's direct and leading role

within the scope of the jointly undertaken criminal activity; that his actions and leadership were

in furtherance of the criminal activity, to include the murder of Fisher; and that all acts by others

---

[115] Doc. 710 at 14.

[116] U.S.S.G. § 1B1.3(a)(1)(B) (2015); U.S.S.G. Suppl. to App. C, Amend. 790.

within the conspiracy were reasonably foreseeable to Webb in connection with that criminal activity.

Because Webb cannot establish prejudice under the *Strickland* standard, his claim that appellate counsel was ineffective for failing to raise this particular issue on appeal is denied.

### b.    Calculation of Drugs Attributable to Webb

Webb next argues that appellate counsel was ineffective for failing to challenge on appeal the amount of cocaine attributable to Webb.  In this case, the PSIR attributed to Webb a total/converted amount of 18,625.72 kilograms of marijuana.[117]  The calculation of controlled substances attributable to Webb did not ultimately control the base offense level, however, which was calculated upon cross-reference to U.S.S.G. § 2A1.1.[118]  Accordingly, this calculation had no bearing on the base offense level.  Moreover, as previously discussed, Webb waived his right to appeal any sentence calculation in this case.  Thus, counsel cannot be considered ineffective for failing to raise this issue, and this claim is denied.

### c.    Fair Sentencing Act

Webb claims that trial counsel was ineffective for persuading him to enter a guilty plea to an offense under 21 U.S.C. § 841(b)(1)(A)(iii), which had a threshold weight of 280 grams or more of cocaine base.  Webb argues that because the conspiratorial acts relative to his leadership in the drug trafficking organization occurred before August 3, 2010, the date the Fair Sentencing Act became effective, counsel should not have advised him to agree to an amount of 280 grams, when the prior threshold weight was 50 grams.  Webb's arguments are without merit.

---

[117] Doc. 710 ¶ 43.

[118] *Id.* ¶ 75.

Webb was charged with conspiring to distribute 280 grams or more of crack cocaine, beginning on or before November 7, 2008, and continuing until on or about April 1, 2011.[119] The superseding indictment was filed in August 2011, after the Fair Sentencing Act was implemented.  The Act was intended to address the crack-to-powder mandatory minimum ratio of 100-to-1, as described by the Supreme Court in *Dorsey v. United States*:

> In 2010, Congress accepted the Commission's recommendations, see 2002 Report 104; 2007 Report 8–9, and n.26, and enacted the Fair Sentencing Act into law.  The Act increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum (while leaving powder at 500 grams and 5,000 grams, respectively).  § 2(a), 124 Stat. 2372.  The change had the effect of lowering the 100-to-1 crack-to-powder ratio to 18-to-1. (The Act also eliminated the 5-year mandatory minimum for simple possession of crack. § 3, 124 Stat. 2372.)[120]

The Court went on to hold, "Congress intended the Fair Sentencing Act's more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010, but who are sentenced after that date."[121]  However, Webb is not entirely a pre-Act offender, as the conspiracy charged in Count One of the Superseding Indictment covers a period to include eight months *after* the enactment of the Act.  Because his crimes continued after the Act, Webb cannot avail himself of its provisions and likewise, *Dorsey* is inapplicable.

Webb further argues that counsel was ineffective for advising him to stipulate to the threshold quantity of 280 grams of crack in the Plea Agreement, which raised the mandatory-minimum sentence to ten years, which was doubled pursuant to § 851.  Webb argues, in effect, that the government had no evidence to prove Webb conspired with others to distribute that

---

[119] Doc. 50.

[120] 567 U.S. 260, 269 (2012).

[121] *Id.* at 273.

amount.  This argument is without merit.  As set forth in the PSIR, Webb was responsible for approximately 4,609.31 grams of crack cocaine, well in excess of the threshold amount under § 841(b)(1)(A)(iii).[122]  That Webb stipulated with the government that he was, at the minimum, culpable for 280 grams of crack cocaine does not establish that trial counsel was ineffective in light of the evidence that Webb distributed nearly fifteen times that amount.[123]  Indeed, the amount of crack cocaine actually attributable to Webb resulted in a putative sentence of life without parole, and the binding plea deal exposing him to no more than 30 years belies any claim of prejudice under *Strickland*.  Moreover, as noted in his second claim, Webb's base offense level was calculated upon the cross-reference to U.S.S.G. § 2A1.1, and not the calculation of controlled substances attributable to him.  This claim is denied.

### d.      *Alleyne* Challenge

Finally, Webb argues that appellate counsel was ineffective for failing to argue that the cross-reference to § 2A1.1 violated the Supreme Court's decision in *Alleyne v. United States*, where it held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime and not a "sentencing factor," and thus must be submitted to a jury for consideration.[124]

Guideline § 2D1.1 sets forth the base offense level for possessing with intent to distribute cocaine and the specific offense characteristics that increase or decrease the base offense level. Section 2D1.1(d) is entitled "Cross References," and instructs the district court as follows:

> If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within

---

[122] Doc. 710 ¶ 43.

[123] *See United States v. Yancy*, 725 F.3d 596, 601–02 (6th Cir. 2013) (explaining that *Alleyne* does not alter the rule that, for statutory enhancements, the defendant's guilty plea and admissions during plea colloquy relieve the government of the burden of proving facts to a jury beyond a reasonable doubt).

[124] 570 U.S. 99, 103 (2013).

the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

18 U.S.C. § 1111(a) defines murder as "the unlawful killing of a human being with malice aforethought." The statute provides that first-degree murder includes "[e]very murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing."[125]

Webb argues that application of the § 2A1.1 first-degree murder cross-reference violated his Fifth Amendment right to due process and his Sixth Amendment right to trial by jury. He contends that this Court's application of the § 2A1.1 cross-reference sentenced him for a murder he denies being involved in and that the Court erroneously applied a preponderance of the evidence standard instead of proof beyond a reasonable doubt as required under *Alleyne*, and that counsel's failure to argue and preserve this objection constitutes ineffective assistance.

Although the Tenth Circuit has not addressed this issue, other courts have determined that *Alleyne* does not prevent application of § 2A1.1. In *United States v. Davis*, the Eighth Circuit Court of Appeals held:

> Application of the § 2A1.1 cross-reference neither increases the penalty beyond the statutory maximum, *see Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000), nor increases the mandatory minimum, *see Alleyne*, 133 S. Ct. at 2155. Regarding whether a jury is required, application of a statutory maximum or minimum [is] to be distinguished from "factfinding used to guide judicial discretion in selecting punishment within limits fixed by law. While such findings of fact may lead judges to select sentences that are more severe than ones they would have selected without those facts, the Sixth Amendment does not govern the element of sentencing."[126]

---

[125] 18 U.S.C. § 1111(a).

[126] 753 F.3d 1361, 1362 (8th Cir. 2014) (per curiam); *see also United States v. Jackson*, 782 F.3d 1006, 1013 (8th Cir. 2015) (holding *Davis* foreclosed defendant's *Alleyne* argument with respect to application of the § 2A1.1 cross-reference); *United States v. Jenkins*, 792 F.3d 931, 935–36 (8th Cir. 2015) ("[Defendant] is incorrect

Similarly, in *United States v. Grissett*, the Fourth Circuit held that because application of § 2D1.1(d)(1) did not increase the defendant's mandatory minimum sentence, his reliance upon *Alleyne* was misplaced.[127]   The Court finds the reasoning of these cases persuasive, and adopts that reasoning here.  Accordingly, Webb cannot sustain his claim that appellate counsel was ineffective for failing to raise an argument that falls short of a "dead-bang winner."[128]

Nor does Webb's reliance on the Supreme Court's decision in *Mathis v. United States*[129] afford him any relief.  In *Mathis*, the Court dealt with the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), and held that, for the purpose of determining whether a prior offense qualifies as a predicate offense under the ACCA, sentencing courts must employ an approach that looks to the elements of the offense and not the means of its commission.[130]  To the extent Webb suggests *Mathis* has some relevance to 21 U.S.C. § 841 because of the potential cross-reference provisions of § 2D1.1(d)(1), his argument is misplaced.  Webb attempts to extend the holding in *Mathis* to argue that facts used to enhance a sentence, or to provide a reason to cross-reference a particular guideline, are elements of the offense.  *Mathis* provides no support for this claim, and Webb's claim on this ground is rejected.

---

that *Alleyne, Apprendi,* and *Blakely* require the jury to find evidence supporting the sentencing enhancements beyond a reasonable doubt.  Those cases require a jury to find beyond a reasonable doubt any fact that increases the penalty beyond the prescribed statutory maximum, or increases the mandatory minimum.").

[127] 606 F. App'x 717, 720 (4th Cir. 2015).

[128] *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009).

[129] 136 S. Ct. 2243 (2016).

[130] *Id.* at 2257.

III.     **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[131]  If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' *and* (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[132]  For the reasons stated above, the Court finds that Webb has not satisfied this standard and, therefore, denies a certificate of appealability as to its ruling denying leave to amend his motion as well as on the merits of his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Virok Webb's Motion for Leave to Amend (Doc. 856), as renewed in *Webb v. United States*, 17-cv-4040-JAR-JPO (Doc. 7) is **denied**;

**IT IS FURTHER ORDERED**  that Webb's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 809) is **denied** without an evidentiary hearing; Webb is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: <u>March 26, 2021</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[131] 28 U.S.C. § 2253(c)(2).

[132] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (emphasis in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).