IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

VIROK D. WEBB,

    Defendant.

Case No. 11-40078-JAR-01

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Virok D. Webb's pro se Motion for Renewed Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. 920). The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the Court denies Webb's renewed motion for compassionate release.

### I.    Background

On October 19, 2011, Defendant Webb and seven co-defendants were charged with conspiracy to distribute 280 grams or more of crack cocaine (Count 1) and conspiracy to distribute 5 kilograms or more of powder cocaine (Count 2).[1] Webb, along with co-defendant Marcus Roberson, was additionally charged with one count of murder to prevent another from providing information concerning a federal crime to a law enforcement officer of the United States, in violation of 18 U.S.C. § 1512(a)(1)(C).[2]

On March 7, 2014, the day after co-defendant Roberson was convicted by a jury, Webb entered a binding guilty plea to one count of conspiracy to distribute 280 grams or more of crack

---

[1] Doc. 50.

[2] *Id.*

cocaine.[3]  In the Plea Agreement, the parties proposed a term of imprisonment between 20 and 30 years as an appropriate sentence; in exchange, the Government agreed to dismiss the second drug conspiracy charge as well as the murder charge, and limited its § 851(a)(1) Information to one prior felony drug conviction, resulting in a mandatory minimum sentence of 20 years rather than life imprisonment.[4]

A presentence investigation report ("PSIR") was prepared using the 2014 Guidelines Manual.[5]  The PSIR calculated Webb's base offense level for the conspiracy to distribute crack cocaine as 34 based on a drug quantity of 18,625.72 kilograms of marijuana (4,609.31 grams of crack cocaine), with a total offense level of 39 after application of sentencing enhancements and reductions.[6]  The PSIR calculated the total offense level at 40, relying on a cross-reference to USSG § 2A1.1 because a victim was killed under circumstances that constitute murder.  With a criminal history category of III, this resulted in a guideline range of 360 months to life.[7]  Pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), the statutory minimum sentence in this case was 20 years.

In ruling on Webb's objections to the PSIR at sentencing, this Court found that the drug quantities set forth in the PSIR were correct and accurate beyond a preponderance of the evidence, based on the evidence the Court heard in the co-defendants' trials.[8]  The Court also overruled Webb's objection to the cross-reference to § 2A1.1.  The Court detailed the evidence that lead it to conclude by a compelling preponderance of the evidence that Roberson killed the

---

[3] Docs. 511, 512.

[4] Doc. 512 at 2–3.

[5] Doc. 710.

[6] *Id.* ¶ 74.

[7] *Id.* ¶ 133.

[8] Doc. 724 at 23–27.

victim, Crystal Fisher, at the direction of Webb.[9]  Pursuant to the binding Plea Agreement, the Court sentenced Webb to a controlling term of 360 months' imprisonment.[10]

On direct appeal, the Tenth Circuit determined that Webb's appeal was "wholly frivolous" and denied him relief.[11]  Webb's timely *pro se* § 2255 motion followed on June 5, 2017.[12]  On March 26, 2021, the Court denied Webb's § 2255 motion.[13]  The Tenth Circuit affirmed on December 12, 2022.[14]

This is Webb's second motion for compassionate release.  The Court denied his first compassionate-release motion on June 23, 2024.[15]

Webb is currently located at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri.  His projected release date is April 26, 2036.[16]

## II.   Discussion

Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[17] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling

---

[9] *Id.* at 27–34.

[10] Doc. 715.

[11] *United States v. Webb*, 651 F. App'x 740, 745 (10th Cir. 2016).

[12] Doc. 809; 28 U.S.C. § 2255(f).

[13] Doc. 863.

[14] Doc. 885.

[15] Doc. 907.

[16] *See* https://www.bop.gov/inmateloc/ (last visited Sept. 12, 2025).

[17] Pub. L. No. 115-391, 132 Stat. 5194.

reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[18]  The Court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[19]  If the Court grants the motion, however, it must address all three steps.[20]

### A.     Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the government invokes it.[21]  Here, the Government concedes in its response that Webb exhausted his claims for compassionate release, so the Court proceeds to the merits.

### B.     Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant the motion.  The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[22]  That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[23]  Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[24]  On November 1, 2023, a new Sentencing

---

[18] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[19] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[20] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

[21] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[22] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[23] *Id.* at 832, 836–37.

[24] *Id.* at 832, 836–37.

Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the Bureau of Prisons or a defendant."[25] The policy statement lists grounds that constitute extraordinary and compelling circumstances, and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence."[26]

Defendant argues that the following extraordinary and compelling reasons justify compassionate release in his case: (1) the Court's consideration of the murder charge and application of USSG § 2A1.1, along with changes to sentencing laws since the time of his sentencing, demonstrates he is serving an unusually long sentence, and (2) rehabilitation. Defendant's arguments on these issues are almost identical to those he made last year in his first motion for compassionate release. For largely the same reasons, the Court finds that Defendant fails to demonstrate extraordinary and compelling under the statute and policy statement for compassionate release.

### 1. The Court's Application of USSG § 2A1.1 and First Step Act Arguments

Webb argues that he would have been sentenced to a lower term of custody if he was sentenced today, due to changes in the law under the First Step Act of 2018 ("FSA"). Specifically, he claims that his mandatory minimum would have been 15 years instead of 20 years, based on the prior felony used in the Government's § 851 Information, and that the policy changes eliminating the disparity in sentencing for powder and crack cocaine offenses would

---

[25] *United States v. Bradley*, 97 F.4th 1214, 1217 (10th Cir. 2024).

[26] U.S.S.G. § 1B1.13(b).

have allowed for a lower sentence than the 30 years imposed by this Court. He claims that if sentenced today, his guideline range would be calculated as 210–262 months.

Under the policy statement, an "unusually long sentence" may form the basis of extraordinary and compelling circumstances as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.[27]

As the Court explained in its July 23, 2024 Order, the FSA would not have changed Webb's sentence. Thus, he has not demonstrated extraordinary circumstances under the statute, or consistent with this provision of the policy statement. First, § 401 of the FSA was not made retroactive to cases that had already been sentenced at the time it was passed.[28] So the FSA would not have changed Webb's mandatory minimum sentence to 15 years.[29] And, even if it the FSA would have changed Defendant's mandatory minimum, it would not have changed the Court's sentence, which was based on a binding plea agreement for a term of custody between 20 and 30 years' imprisonment.

---

[27] U.S.S.G. § 1B1.13(b)(6).

[28] Pub. L. No. 115-391 § 401(c), 132 Stat. 5194, 5221 (2018); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) ("[T]he fact a defendant is serving a pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A) cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i). Instead, we conclude that it can only be the combination of such a sentence and a defendant's unique circumstances that constitute 'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i).").

[29] As part of the Plea Agreement, the government dismissed the murder count against Webb, allowing him to avoid a mandatory-minimum term of life imprisonment. *See* 18 U.S.C. §§ 1512(a)(3), 1111. And even if a 15-year mandatory-minimum term applied, this would not have changed the binding plea agreement to which Webb entered, in which he agreed that he would be sentenced to a term between 20–30 years.

Nor is the Court persuaded by Webb's argument that his guideline range would have been lower if he was sentenced today. Webb acknowledges that his calculation does not take into account the cross-reference under U.S.S.G. § 2A1.1, which the Court applied instead of U.S.S.G. § 2D1.1—the guideline that is used to calculate offense level based on drug quantity. This Court determined at sentencing that the Government met its burden of establishing by a preponderance of the evidence that Webb was involved in killing Fisher under circumstances that would constitute first degree murder under 18 U.S.C. § 1111.[30] In making this determination, the Court relied on the trial transcripts and testimony presented in the trials of co-defendants Dewberry and Roberson, cases over which this Court also presided. The Court applied the cross-reference over Webb's objection, which raised his guideline range to 360 months to life imprisonment.

Webb argues that the Court's consideration of the murder in its guidelines calculation "drastically increased his sentence" from 20 to 30 years, but this was precisely the range of time he negotiated in his plea agreement. The fact that Webb only pled guilty to the drug charge did not prevent the Court from applying the cross reference under § 2A1.1, which the Court applies if a victim was killed under any circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States.[31] At sentencing, the Court detailed the evidence that lead it to conclude by a compelling preponderance of the evidence that Roberson killed Fisher at the direction of Webb because she was reporting his drug crimes to law enforcement.

---

[30] *See United States v. Ramos*, 695 F.3d 1035, 1039 (10th Cir. 2012) (citation omitted) (explaining the government bears the burden of proving sentencing enhancements by a preponderance of the evidence).

[31] USSG § 2D1.1(d)(1) (2014).

The Court also notes that although Webb stipulated with the Government in his Plea Agreement that he was, at the minimum, culpable for 280 grams of crack cocaine, the PSIR attributed to Webb was 4,609.31 grams of crack cocaine, well in excess of the threshold amount under § 841(b)(1)(A)(iii).[32] The Court found that the PSIR's calculation was supported by a preponderance of the evidence. In other words, the Court found by a preponderance of the evidence that Webb distributed nearly fifteen times the amount stipulated in the Plea Agreement.[33] Indeed, the amount of crack cocaine actually attributable to Webb resulted in a putative sentence of life without parole. The binding plea deal, in contrast, exposed him to no more than 30 years. In sum, the Court does not find Webb received a higher sentence than would likely be imposed if he was sentenced today. Nor is he serving an "unusually long sentence" as contemplated by the policy statement.

### 2. Rehabilitation

Webb again asks the Court to take into account his post-sentencing rehabilitation. He points to his employment record, leadership skills, lack of disciplinary infractions, and letters of support. Webb also has availed himself of programming while in custody. Once again, the Court applauds Webb's efforts at rehabilitation over these last twelve years. But Congress has made clear that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason."[34] Because the Court finds that none of the other grounds raised by Defendant constitute extraordinary and compelling circumstances under the statute and policy statement, it will not consider Defendant's rehabilitation in isolation.

---

[32] Doc. 710 ¶ 43.

[33] *See United States v. Yancy*, 725 F.3d 596, 601–02 (6th Cir. 2013) (explaining that *Alleyne* does not alter the rule that, for statutory enhancements, the defendant's guilty plea and admissions during plea colloquy relieve the government of the burden of proving facts to a jury beyond a reasonable doubt).

[34] 28 U.S.C. § 994(t); *see also* U.S.S.G. § 1B1.13(d).

## C.  Section 3553(a) Factors

The Court next considers the factors set forth in § 3553(a) in light of post-sentencing developments.[35]  Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[36]  "[T]he facts allegedly establishing extraordinary and compelling reasons for release . . . . are relevant to the § 3553(a) analysis."[37]

Webb contends in his motion that the Court previously erred in considering these factors, which he contends are met.  But Webb's motion does not persuade the Court to change its mind that the § 3553 factors weigh heavily against compassionate release, even if Webb was able to show extraordinary and compelling circumstances.  As already stated in the Court's first order denying compassionate release, this Court presided over the trials of two co-defendants, and is therefore familiar with the evidence in this case.  That evidence showed that Fisher was brutally murdered in the very early morning hours of March 3, 2010, only hours after having been

---

[35] *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (stating that evidence of post-sentencing conduct "may be highly relevant" under § 3553(a)); *Concepcion v. United States*, 597 U.S. 481, 486 (2022) ("[A] district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion.").

[36] 18 U.S.C. § 3553(a).

[37] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 943 (10th Cir. 2021)).

approached by law enforcement officials to act as a confidential informant and provide information about Webb's drug trafficking organization.

Several witnesses testified to statements by Webb that implicated himself and Roberson in the murder. There was also evidence of phone, text, and chirp communications between Roberson, Webb, Fisher and others, establishing a compelling timeline of events during the day, evening and nighttime hours of March 2, 2010, and the early morning hours of March 3, 2010, after Fisher's murder. The Court previously outlined this evidence in detail in its Memorandum and Order denying Roberson's motion for judgment of acquittal.[38] Among other statements attributed to Webb, Webb told Raschon Smith that Fisher's murder was some of his "work," done after he learned that Fisher had spoken with police and that Fisher was going to inform on them. The Court heavily weighs this evidence, in addition to the evidence of Webb's drug distribution activity, as illustrative of the serious and lethal nature and circumstances of the offenses in this case.

The Court does not find that the history and characteristics of Webb, in terms of his post-sentencing conduct, outweigh the Court's consideration of the nature and circumstances of the offense in this matter. While the Court commends Defendant's efforts at rehabilitation while in prison, and is sympathetic to the challenges of his medical conditions while incarcerated, these factors fail to compel a finding that compassionate release is warranted here.

Webb takes issue with the Court's previous finding that Webb continues to be a danger to the public. But Webb fails to provide the Court with argument or evidence that compels a contrary finding. The evidence at his co-defendants' trials implicated him in a heinous murder plot. Again, while the Court commends Webb for taking advantage of programming while in

---

[38] Doc. 700 at 12–16.

prison and his strong work ethic, it does not assure this Court that after serving less than half of his sentence, he is no longer a threat to the public. Thus, even if the Court found extraordinary and compelling circumstances present in Defendant's case, it would find that the § 3553(a) factors weigh against compassionate release.

In sum, Defendant fails to establish any of the three prerequisites for compassionate release under 18 U.S.C. § 3582(c)(1)(A); therefore, his motion must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Virok Webb's Motion for Renewed Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. 920) is **denied**.

**IT IS SO ORDERED.**

Dated: September 16, 2025

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE